[Crim. No. 9590. Second Dist., Div. Four. Aug. 13, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT DOMINGUEZ, Defendant and Appellant.

Daniel J. Jaffe, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harvey D. Unrot, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with a violation of section 11500 of the Health and Safety Code (possession of heroin); two prior felony convictions were alleged. He pled not guilty and denied the priors. Jury trial was duly waived, both as to the offense charged and as to the priors; the case was submitted on the transcript of the preliminary examination and, as to the priors, on the probation report. He was found guilty, the priors were found to be true as alleged, probation was denied, and he was sentenced to state prison.

Shortly after midnight, the parole agent-manager of a halfway house for narcotic addicts, maintained by the Department of Corrections, discovered defendant and a companion in the lobby of the building. They were not residents and it was long after visiting hours. The manager challenged them; the companion ran away; at the manager's request defendant went to the manager's office. He was incoherent and gave other evidence of being under the influence of either alcohol or drugs. The manager called the police. When the officer arrived, he found defendant in what the officer described as "a stuperous condition" and had the odor of alcohol on his breath. The officer asked defendant if "he had any narcotic marks, if so would he show them to" the officer. The defendant showed the officer his left arm, on which the officer found "numerous scab formations as well as a fresh puncture wound which, . . . was bleeding slightly." From these facts the officer concluded that defendant had just given himself an injection. The officer then asked for, and received, permission to "look for more." A search of defendant followed, resulting in the discovery of a rubber eyedropper, a hypodermic needle, a piece of cellophane tape, two pieces of cotton and some tissue paper containing two gelatin capsules containing a white powder. Subsequent tests showed the powder to consist of two milligrams of heroin.

I

Defendant contends that the narcotic paraphernalia and heroin found by the search of his person were the product of

an illegal arrest and illegal search. The point is without merit. The record shows no arrest prior to the search, so that it cannot be claimed that the discovery of the marks was the product of a previous arrest. The manager had done no more than to ask a midnight prowler to submit to questioning, and the officer had done no more than to conduct a preliminary investigation of the manager's complaint. ▮ While we have held that, standing alone, the mere observation by an officer of what he believes to be hypodermic marks does not create probable cause for arrest or for search (*People* v. *Ferguson* (1963) 214 Cal.App.2d 772, 775-776 [29 Cal.Rptr. 691]), here the officers had something more than that. Defendant had been discovered, after hours, in a stuporous condition, in an establishment maintained for the housing and treatment of narcotic addicts. The discovery of scabs, and especially of a fresh puncture wound, on a person in that condition and discovered in such a place, falls within the rationale of *People* v. *Rios* (1956) 46 Cal.2d 297 [294 P.2d 39], *People* v. *Hollins* (1959) 173 Cal.App.2d 88 [343 P.2d 174], and *People* v. *Jaurequi* (1956) 142 Cal.App.2d 555 [298 P.2d 896], rather than of *Ferguson*. ▮ The totality of these facts—defendant's physical condition, the nature of the place where he was discovered, and the marks—gave the officer reasonable cause to believe that defendant had, within the immediate past, possessed narcotics and that he might still have a narcotic on his person. A search, based on that ground, was lawful and its product admissible.

## II

Relying on our decision in *People* v. *Aguilar* (1963) 223 Cal.App.2d 119 [35 Cal.Rptr. 516], defendant urges that the possession of as little as two milligrams of heroin is not sufficient to support a conviction. The case relied on does not support that conclusion. *Aguilar* held only that the essential element of knowledge of the narcotic nature of a substance could not be proved by the mere possession of a residue burned on a spoon, where delicate laboratory tests were required in order to determine the chemical content. But that case distinguished cases, such as *People* v. *Anderson* (1962) 199 Cal.App.2d 510, 520 [18 Cal.Rptr. 793], and *People* v. *Marich* (1962) 201 Cal.App.2d 462 [19 Cal.Rptr. 909], where the narcotic was present in its ordinary condition, identifiable without the necessity of laboratory testing. The instant case is like the cases just cited and contains none of the elements on which *Aguilar* was based. ▮ Defendant's

knowledge was amply proved by the marks on his arms; the element of possession is met by proof of any recognizable quantity.

### III

Finally, defendant contends that the prior convictions were not proved by competent evidence. His proposition is that, although defendant had personally waived a jury trial on the issue of the priors, he had not personally joined in the stipulation to submit that issue on the probation report. But the objection to the use of a probation report for this purpose is that the report is hearsay. (*People* v. *Bryson* (1959) 172 Cal.App.2d 536 [342 P.2d 274].) Unlike a waiver of jury trial, where the constitution requires the personal action of the defendant, the tactical decision to object or not to object to the admission of hearsay is for counsel acting in his professional capacity. (*People* v. *Dessauer* (1952) 38 Cal.2d 547, 552 [241 P.2d 38].) It is nowhere suggested that the prior convictions alleged were not, in fact, true. Trial counsel is to be commended, and not criticized, for a tactic which obviated an unnecessary formal step in the proceedings.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.